

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MONICA STASKA, an individual,

Plaintiff,

v.

WALMART, INC., a Delaware Corporation and DOES 1 through 100, inclusive,

Defendants.

Case No.: 3:23-cv-02332-GPC-MSB

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[ECF No. 31]

This case concerns a slip and fall at a Walmart store. On September 15, 2025, Defendant Walmart, Inc. ("Defendant" or "Walmart") filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule")[1] 56. ECF No. 31. On October 17, 2025, Plaintiff filed her response in opposition to Defendant's motion, ECF No. 37, and Defendant replied on November 7, 2025, ECF Nos. 41, 42. The Court finds the matter suitable for disposition without a hearing under Local Rule

[1] "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

7.1(d)(1). For the reasons below, the Court DENIES Defendant's motion for summary judgment.

**PROCEDURAL BACKGROUND**

On October 27, 2023, Plaintiff filed her complaint against Defendant in the California Superior Court for the County of San Diego. *See* ECF No. 1, at 6. Plaintiff alleged two causes of action: general negligence and premises liability. *Id.* at 9. On December 22, 2023, Defendant filed a notice of removal, removing the action to this Court based on diversity jurisdiction. *See generally* ECF No. 1.

On January 19, 2024, Defendant filed an answer in response to Plaintiff's complaint. ECF No. 2. The parties subsequently engaged in discovery, and, on September 15, 2025, Defendant filed the present motion for summary judgment. ECF No. 31. On October 17, 2025, Plaintiff responded to the motion for summary judgement, ECF No. 37, and to Defendant's statements of allegedly undisputed material facts, ECF No. 34, and submitted several evidentiary exhibits, including the declaration of Alex Balian, an expert witness on retail store safety, ECF Nos. 35, 36. On November 7, 2025, Defendant filed a reply in support of its motion, ECF No. 41, as well as a response to Plaintiff's statements of undisputed materials facts, ECF No. 42. Also on November 7, Defendant filed an objection to the expert testimony of Alex Balian. ECF No. 43. Plaintiff responded to Defendant's objection on the same day. ECF No. 44.

**FACTUAL BACKGROUND**

Plaintiff was shopping at a Walmart store in San Diego, California, on June 25, 2023, when she slipped in a substance on the ground and fell at 1:39 p.m. ECF No. 31-1, at 9; ECF No. 34, at 2. Defendant Walmart has provided the Court with video evidence depicting the slip and fall area (referred to by the parties as the area of incident or "AOI") an hour prior to and following Plaintiff's fall, which the Court

will reference as "Exhibit 1." *See* ECF No. 32. Below is a screen shot extracted from the video that depicts the AOI, which includes the shampoo and soap aisles.




The video is taken from the perspective of the far end of the shampoo aisle, which is depicted in the lower half of the above captured screen shot from Exhibit 1. *See generally* Exhibit 1. Towards the top of the screen shot is the soap aisle. *Id.* The soap and shampoo aisles are divided by a perpendicular aisle. *Id.* At the very top of the frame, the end of the soap aisle closest to the perpendicular aisle—where Plaintiff fell—is visible. *Id.* The video also depicts the partial wall obstructing the view from the shampoo aisle into the soap aisle. *See generally id.*

The video captures Plaintiff's fall, but it is partially obscured due to the camera angle and aisle traffic. *Id.* at 1:39:06-10.[2] The image below displays the soap and shampoo aisles one second prior to Plaintiff's fall. Plaintiff is wearing light-colored pants, and her legs are visible at the very top of the frame.

[2] The Exhibit 1 pincites refer to the time stamp at the top of the video exhibit.




Defendant's Statement of Undisputed Material Facts states that Plaintiff fell in the "shampoo aisle," ECF No. 31-4 at 2, while Plaintiff counters that she fell in the "soap aisle," ECF No. 34, at 2. Plaintiff testified that she slipped on a puddle of clear, thick liquid on the floor, which resembled soap. ECF No. 31-1, at 96; ECF No. 35, at 45, 48. As a result of the fall, Plaintiff was diagnosed with multiple tears to her hamstring and tendons, plus a torn meniscus. ECF No. 34, at 20.

Plaintiff did not see the clear substance on the floor prior to slipping on it. ECF No. 35, at 44-45. Plaintiff further testified that, when looking at the place where she fell, "you could tell people had . . . slipped in it as well or ran carts through it," ECF No. 35, at 47, because there were "black track marks" in the substance, ECF No. 31-1, at 98, and that the spill was "long" rather than a "puddle," *id.* at 96. Carlos Echeverria—an asset protection manager at the Walmart store where Plaintiff fell, ECF No. 31-2, at 2—took photos of the scene after the incident. *See* ECF No. 35, at 12, 22-26. The photos reveal a clear substance on the ground as well as black track marks on the floor. *See id.* at 22-26.

In the time leading up to Plaintiff's fall, Walmart employee Julia Rojas was stocking shelves in the shampoo aisle. ECF No. 31-1, at 73. The screen shot below shows Ms. Rojas working in the shampoo aisle.




Ms. Rojas was working on the right-hand side of the shampoo aisle. *See* Exhibit 1, at 12:45:25-1:30:55; *see also* ECF No. 39, ¶ 6. To her left was the partial wall protruding between the shampoo and soap aisles, as well as the aisle bisecting the shampoo and soap aisles. *See* Exhibit 1, at 12:45:25-1:30:55. Ms. Rojas testified regarding the visibility from her location in the shampoo aisle to the surrounding areas, including the soap aisle. ECF No. 31-1, at 77. She noted that "specifically in that area, that whenever you, the employee, are working there, because of that wall that you have on the side, it will not let you visualize what's on the other side or even further ahead." *Id.*

At 1:19 p.m., Ms. Rojas left her position in the shampoo aisle and turned left onto the perpendicular aisle dividing the soap and shampoo aisles. Exhibit 1, at 1:19:20-25. Ms. Rojas testified that, at that time, she visually inspected the space

where Plaintiff fell. ECF No. 31-3, at 2. At 1:20 p.m., Ms. Rojas returned to her work spot in the shampoo aisle, retracing the same path she used to depart. Exhibit 1, at 1:20:26-30. Ms. Rojas again testified that, at that time, she visually inspected the area where Plaintiff fell. ECF No. 31-3, at 2. At 1:30 p.m., Ms. Rojas again departed her work spot in the shampoo aisle, promptly turning left down the aisle intersecting the soap and shampoo aisles. Exhibit 1, at 1:30:17-22. Again, Ms. Rojas returned a few seconds later via the same path. *Id.* at 1:30:40-44. Ms. Rojas testified that, each time she passed the soap aisle, she visually inspected the area where Plaintiff fell. ECF No. 31-3, at 2; 31-1, at 86. She further testified that, had she seen any spill, she would have cleaned it immediately. ECF No. 31-1, at 81-82. At no time does the video show Ms. Rojas, or any other Walmart employee, enter the soap aisle—the portion of the aisle after the perpendicular bisecting aisle—during the hour leading up to Plaintiff's fall. *See generally* Exhibit 1. By the time Plaintiff fell at 1:39 p.m., Ms. Rojas was no longer working in the shampoo aisle. *See* Exhibit 1, at 1:30:50-1:31:02.

Walmart employees are trained to "clean as you go," where they are encouraged to immediately address any hazard that may cause an accident that they come across during their shifts. ECF No. 31-1, at 37; *see also* ECF No. 31-1, at 70 (Ms. Rojas explaining that she is on the lookout for hazards in the area that she is working in during her entire shift.). Ms. Rojas testified that she would never leave a spill unattended, and that her responsibilities include looking on the floor for slipping or tripping hazards. ECF No. 31-1, at 65, 70. Ms. Rojas also participates in Walmart's "towel-in-pocket" program, and always keeps towels with her on her work cart to clean any smaller spills she comes across during her shift. *Id.* at 67-68. Additionally, Ms. Rojas testified that when she is working, she is always on the lookout for any situation, such as a spill, in the immediate vicinity of where she is working. She elaborated, however, that she would not "go and do inspection on a

different aisle that [she is] not working in unless a customer comes up and asks for [her] help." *Id.* at 70.

Carlos Echeverria, who helps manage safety meetings and train Walmart employees on safety procedures, identified the health and beauty aids area—which includes the soap and shampoo aisles—as a high traffic area. ECF No. 35, at 7; ECF No. 42 ¶ 38. Additionally, both Mr. Echeverria and Ms. Rojas testified that soap is among the most common slip hazards in a Walmart facility. ECF No. 35, at 4, 31-32. While Defendant does not provide specific training to associates regarding high-traffic or high-risk areas, it emphasizes to its associates to keep an eye on those areas more diligently than others. ECF No. 35, at 7.

## LEGAL STANDARD

### I. Rules 26 and 37

Federal Rule of Civil Procedure 26 governs expert disclosures and avers that parties must make expert disclosures "at the times and in the sequence that the court orders*." Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). Rule 37(c)(1) "gives teeth" to Rule 26's disclosure requirements by forbidding the use on a motion or at trial of any information that was not properly disclosed. *Id*. Rule 37(c)(1)'s exclusion provisions are a "self-executing" and "automatic" sanction. Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment.

"The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d, at 827. When considering whether a violation of a discovery deadline is justified or harmless, a district court should consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc*., 375 F. App'x 705,

713 (9th Cir. 2010). Further, the burden to prove harmlessness or justification is on the "party seeking to avoid Rule 37's exclusionary sanction." *Id.*

Overall, the "Ninth Circuit gives 'wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)'" *Stamas v. Cnty. of Madera*, No. 1:09-CV-00753 LJO, 2011 WL 826330, at *3 (E.D. Cal. Mar. 3, 2011) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

## II. Rule 56

Per Federal Rule of Civil Procedure 56, summary judgment is appropriate when the evidence in the record demonstrates "that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and a fact is "material" when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56 (1963)). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325.

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. The Court does not engage in credibility determinations or the weighing of evidence; these functions are for the trier of fact. *Id.*

## DISCUSSION

### I. The Court Will Exclude Mr. Balian's Expert Declaration from Consideration at Summary Judgment.

Defendant argues that the declaration of Mr. Alex Balian, ECF No. 36, must be excluded from consideration for the purposes of Defendant's motion because Plaintiff failed to timely disclose Mr. Balian as an expert. *See* ECF No. 41, at 8; ECF No. 43, at 1-2.

On August 11, 2025, the Parties filed a joint motion to continue expert discovery deadlines in this case by sixty days. ECF No. 29. The Court granted the parties' motion, but extended the deadlines by forty-five days rather than the requested sixty. ECF No. 30, at 2. The updated deadlines required the Parties to designate expert witnesses by no later than September 25, 2025. *Id.* The Court also extended the Parties' deadline to designate rebuttal experts to October 9, 2025, and the deadline to disclose expert reports to November 10, 2025. *Id.*

Defendant argues that Plaintiff missed the deadline to designate Mr. Balian as an expert witness, as they disclosed him to Defendant on October 10, 2025—fifteen days after the deadline. ECF No. 44, at 2. Defendant notes that neither Mr. Balian's name nor testimony were provided to Defendant prior to the deadline to disclose retained experts. ECF No. 41, at 8. Defendant further asserts that Plaintiff's failure to disclose Mr. Balian was not harmless, as "Mr. Balian's declaration presents material testimony concerning Walmart's motion for summary judgment." ECF No. 44, at 2. Specifically, Defendant alleges that it was "deprived of the opportunity to cross-examine Mr. Balian prior to filing its motion for summary judgment." ECF No. 41, at 8.

Plaintiff does not argue that its disclosure of Mr. Balian was timely, though she does note that she "notified [D]efendant of the expert prior to designation." ECF No. 44, at 3. Plaintiff goes onto argue that the delay was harmless because Defendant

had time to designate a rebuttal expert and address Mr. Balian's testimony in its reply. *Id.* Plaintiff further notes that Mr. Balian's testimony would not disrupt trial, as the final pretrial conference is not until May 15, 2026. *Id.* Lastly, Plaintiff indicates that the parties had previously agreed to postpone expert designation until after the Court ruled on Defendant's motion for summary judgment, though such an agreement is reflected nowhere in the record. *Id.*

Because Plaintiff does not dispute that her disclosure of Mr. Balian as an expert witness was untimely, she must prove that the delay was either substantially justified or harmless to avoid the "self-executing" exclusion sanctions of Rule 37(c)(1). *Goodman*, 664 F.3d at 827. Plaintiff makes no argument that the delay was substantially justified. Accordingly, the issue is whether the delay is harmless.

Defendant's argument as to prejudice is not strong. While Defendant argues that Plaintiff's untimeliness rendered Defendant unable to address Mr. Balian's testimony in its motion for summary judgment, Defendant filed its motion on September 15, 2025—ten days before Plaintiff's deadline to disclose expert witnesses. *See* ECF Nos. 30, 31. Thus, Plaintiff easily could have timely designated her expert, and Defendant still would have been unable to consider such an expert's testimony in its motion.

However, Plaintiff's harmlessness argument is also lacking. Plaintiff's assertions regarding prejudice to Defendant and Defendant's ability to cure such prejudice are limited to one, conclusory sentence. *See* ECF No. 44, at 4 ("Defendant had enough time to consult and designate a rebuttal expert."). It is also true that, while Plaintiff indicates that Defendant had time to consult and designate a rebuttal expert, ECF No. 44, at 3-4, Plaintiff disclosed Mr. Balian one day after Defendant's deadline to do so, *see* ECF No. 30. Thus, Plaintiff's untimeliness would necessarily result in the adjustment of multiple Court deadlines, and "[d]isruption to the schedule of the court and other parties . . . is not harmless." *Wong v. Regents of Univ.*

*of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). Plaintiff further loosely addresses—without detail—factors for assessing harmlessness as outlined in Fourth Circuit case law as opposed to analyzing the factors set forth by the Ninth Circuit in *Lanard Toys Ltd. v. Novelty, Inc. See* ECF No. 44, at 3-4; *Lanard Toys Ltd.*, 375 Fed. Appx. at 713. Accordingly, Plaintiff's "feeble effort doesn't satisfy [her] burden to prove harmlessness," *Est. of Taschek v. Fid. Life Ass'n*, 740 F. Supp. 3d 1072, 1082 (D. Nev. 2024), and the Court will not consider Mr. Balian's expert declaration in consideration of this motion for summary judgment.[3] However, the ruling is made without prejudice should Plaintiff move for leave to amend her expert disclosures.

## II. A Genuine Issue of Material Fact Exists as to Walmart's Constructive Knowledge of the Dangerous Condition.

Plaintiff brings two causes of action against Defendant: negligence and premises liability. The elements of a negligence cause of action are duty breach, causation, and damages. *Coyle v. Historic Mission Inn Corp*., 24 Cal. App. 5th 627, 634 (2018). "Premises liability is comprised of the same elements as negligence," and "the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases." *Id.* (quoting *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1158 (2016)). Thus, the analysis below applies to both Plaintiff's causes of action.

Plaintiff argues that Defendant was negligent in maintaining its premises. In California, "a store owner is not an insurer of the safety of its patrons." *Ortega v. Kmart Corp*., 26 Cal. 4th 1200, 1205 (2001). Rather, the owner simply owes customers a "duty to exercise reasonable care in keeping the premises reasonably safe." *Id.* This includes "making reasonable inspections of the portions of the

[3] Defendant also objects to the substance of Mr. Balian's declaration. *See* ECF No. 43, at 3-10. However, because the Court will not consider Mr. Balian's declaration for the purposes of deciding this motion, it need not address Defendant's concerns regarding its content.

premises open to customers, and the care required is commensurate with the risks involved." *Id.* Overall, "the basic principle" is that the owner "must use the care required of a reasonably prudent [person] acting under the same circumstances." *Id.* (quoting *Bridgman v. Safeway Stores, Inc*., 53 Cal. 2d 443, 448 (1960)).

"Because the owner is not the insurer of the visitor's personal safety . . . the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." *Id.* at 1206. Essentially, the plaintiff "has the burden of showing that the owner had notice of the defect in sufficient time to correct it." *Id.* In the absence of actual knowledge, a plaintiff must show that the dangerous condition existed "for at least a sufficient time to support a finding the defendant had constructive notice of the hazardous condition." *Id.* at 1212. In other words, a plaintiff must show that the hazardous condition existed long enough that a store owner exercising reasonable care would have discovered and corrected it. *Id.* Constructive knowledge "may be shown by circumstantial evidence 'which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.'" *Id.* at 1206-07 (quoting *Hatfield v. Levy Bros*., 18 Cal. 2d 798, 805 (1941)). However, "allowing the inference does not change the rule that if a store owner has taken care in the discharge of its duty, by inspecting its premises in a reasonable manner, then no breach will be found even if a plaintiff does suffer injury." *Id.* at 1211.

"The exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, because, obviously, it varies according to the circumstances." *Louie v. Hagstrom's Food Stores*, 81 Cal. App. 2d 601, 608 (1947). However, "evidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it." *Ortega*, 26 Cal. 4th at 1203; *see also Perez*

*v. Target Corp.*, No. SACV 11-823-JST SSX, 2011 WL 5075612, at *3 (C.D. Cal. Oct. 25, 2011). Further, "whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury," and "each accident must be viewed in light of its own circumstances." *Ortega*, 26 Cal. 4th at 1207(citing *Louie*, 81 Cal. App. 2d at 608).

Here, Plaintiff does not dispute that Defendant lacked actual knowledge of the hazardous condition. Thus, the issue in dispute is whether there is sufficient evidence to support a finding that Defendant had constructive notice of the spill in time to have remedied it before Plaintiff fell. *See Perez v. Ow*, 200 Cal. App. 2d 559, 560 (1962).

Defendant argues that summary judgment is appropriate because (1) Plaintiff lacks any evidence as to the length of time the spill was on the floor, ECF No. 31, at 14, (2) it is "undisputed" that Ms. Rojas inspected the place where Plaintiff fell just eight minutes and thirty-five seconds prior to her fall, *id.* at 18, and (3) it is "undisputed" that the dangerous condition could not have lasted more than eight minutes and thirty-five seconds, *id.* at 16.

Plaintiff counters that a genuine issues of material fact exists as to (1) whether Ms. Rojas conducted an inspection of the area where Plaintiff fell and (2) the length of time the spill remained on the floor. ECF No. 37, at 18-19. Specifically, Plaintiff argues that the surveillance video demonstrates that Ms. Rojas did not inspect the area where Plaintiff fell. ECF No. 37, at 19. Further, Plaintiff points to her own testimony that it looked like other customers had run their carts through the spill because there were black track marks though the spill and it was "long" rather than a "puddle." ECF No. 31-1, at 96, 98; ECF No. 37, at 19. Lastly, Plaintiff argues that the photos taken by Mr. Echeverria—which display black track marks through the clear spill—further support an inference that the spill had been on the floor for an unreasonable period of time. ECF No. 37, at 19.

A reasonable juror could conclude that, counter to Defendant's contentions, Ms. Rojas did not inspect the area where Plaintiff fell eight minutes and thirty-five seconds prior to Plaintiff's fall. Per the surveillance video, Ms. Rojas did not enter the soap aisle at any time in the hour leading up to Plaintiff's fall. *See generally* Exhibit 1. When Ms. Rojas left the shampoo aisle via the perpendicular aisle intersecting the shampoo and soap aisles, she did so quickly, and at no point does the video clearly show Ms. Rojas look toward the soap aisle. *Id.* at 1:19:00-1:31:00. Thus, though Ms. Rojas testified that she visually inspected the area where Plaintiff fell, ECF No. 31-1, at 2, a reasonable juror could conclude that the video evidence calls such testimony into question. "When video evidence is unclear or subject to multiple interpretations, it is the jury's role, not the court's, to interpret that evidence." *Powell v. City of Elko*, No. 3:21-CV-00418-ART-CSD, 2024 WL 3964648, at *4 (D. Nev. Aug. 28, 2024) (citing *Hughes v. Rodriguez*, 31 F.4th 1211, 1219-20 (9th Cir. 2022)). Additionally, Ms. Rojas testified as to the visibility limitations caused by the structure of the soap and shampoo aisles, as well as the fact that she inspects the area where she is working but not "different aisle[s]," unless she is asked to do so. ECF No. 31-1, at 70, 77. Such evidence could further lead a reasonable juror to find that, counter to Ms. Rojas' testimony, she did not inspect the floor of the soap aisle prior to Plaintiff's fall.

Thus, while Defendant relies on case law holding that "if there is undisputed evidence that an active inspection of the relevant area occurred less than 30 minutes before the accident, summary judgment in favor of the store owner is appropriate," ECF No. 31, at 17 (quoting *Mirtaheri v. Sprouts Farmers Mkt., Inc.*, No. 2:20-CV-05351-SB-RAO, 2021 WL 6751996, at *3 (C.D. Cal. Dec. 29, 2021)), such case law does not demand summary judgment here because Plaintiff disputes that an active inspection occurred. Considering the video evidence, a reasonable juror could agree.

Further, Defendant relies on *Gonzalez v. Interstate Cleaning Corporation*, 106 Cal. App. 5th 1026 (2024), to argue that Walmart's training policies on store inspection and cleanliness, along with Ms. Rojas' asserted visual inspection of the area, demand summary judgment. ECF No. 31, at 15-16. However, the *Gonzalez* defendant submitted not only information about the store's training and maintenance procedures but also store reports documenting an employee inspection of the area just a few minutes prior to the plaintiff's accident. 106 Cal. App. 5th at 1036. Here, no such documentation of an inspection of the floor of the soap aisle exists. Further a reasonable juror could interpret the video evidence to conclude that Ms. Rojas either did not inspect the floor of the soap aisle or did not do so in a reasonable manner given the admitted high-traffic and high-risk nature of the area. Thus, Defendant's reliance on *Gonzalez* is unavailing.

A reasonable juror could further conclude that the spill was on the floor for an unreasonable length of time. Plaintiff testified that, upon examining the floor after she fell, it looked like other customers had run their carts through the spill because there were black track marks though the spill and it was "long" rather than a "puddle." ECF No. 31-1, at 96, 98; ECF No. 37, at 19. Defendant argues that such testimony should be disregarded as "pure speculation." ECF No. 41, at 6. However, such testimony is based on Plaintiff's first-hand observations of the scene and need not be disregarded. Further, Plaintiff has produced the photos taken by Mr. Echeverria which display black track marks through the clear spill. ECF 35, at 22-25. Considering the Plaintiff's testimony and the photos, a reasonable juror could infer the liquid had been on the ground long enough for other carts to roll through and disperse the spill. *Fowler v. Wal-Mart Stores, Inc.*, No. 2:16-CV-450-JCM-GWF, 2017 WL 2271571, at *3 (D. Nev. May 24, 2017) (In particular, a reasonable jury could conclude that the spill existed for an unreasonable length of time based on the photos of the spill . . .").

Defendant argues that this case is indistinguishable from *Perez v. Ow*, 200 Cal. App. at 559. However, in *Perez v. Ow*, there was "absolutely no evidence from which any conclusion at all can be drawn as to the length of time the [hazard] had been there." *Id.* at 560. Here, Plaintiff testified that the liquid was spread across the floor and that it had black track marks through it. This testimony is further supported by the photos of the scene. Accordingly, Plaintiff has provided "sufficient circumstantial evidence to raise an inference the liquid was on the floor for an extended period of time." *Perez v. Target Corp.*, No. SA-CV 11-823-JST SSX, 2011 WL 5075612, at *4 (C.D. Cal. Oct. 25, 2011).

"Presented with this evidence, the Court's role is only to determine whether a genuine issue of material fact exists, not to make determinations of credibility or weigh the evidence." *Perez v. Target Corp.*, 2011 WL 5075612, at *4. Here, a genuine triable issue remains as to both (1) when—and whether—Defendant inspected the area where Plaintiff fell, and (2) how long the liquid was on the floor before Plaintiff slipped on it. Both issues are material, as they relate to whether Defendant had constructive knowledge of the dangerous condition prior to Plaintiff's fall, which is necessary to impute liability to Defendant. *See, e.g.*, *Ortega*, 26 Cal. 4th at 1206 ("[E]vidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it."); *Louie*, 81 Cal. App. 2d at 128-29 ("[P]laintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied[.]"). Further, these issues are "determinative of whether [Defendant] exercised reasonable care in keeping its premises reasonably safe." *Perez v. Target Corp*, 2011 WL 5075612, at *4 (citing *Ortega*, 26 Cal 4th at 1205). Lastly, "[b]ecause the determination of 'whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a

question of fact for the jury,' summary judgment is not appropriate." *Id.* (quoting *Ortega*, 26 Cal. 4th at 1207).

Though the Parties have also presented evidence regarding Defendants' training policies and cleaning procedures and the adequacy of such policies, the Court need not address these arguments here. It is enough that Plaintiff has demonstrated genuine issues of material fact as to when Defendant inspected the area and how long the liquid was on the floor.

**CONCLUSION**

For the reasons set forth above, the Court DENIES Defendant's motion for summary judgment as to both of Plaintiff's causes of action.

It is so ORDERED.

Dated: December 10, 2025

Hon. Gonzalo P. Curiel
United States District Judge